## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————

|  |  |  |
|---|---|---|
| **THE JAMES MADISON PROJECT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.  15-1307 (RMC)** |
| | ) | |
| **DEPARTMENT OF JUSTICE,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

———————————————————  )

### MEMORANDUM OPINION

The James Madison Project challenges the adequacy of the responses to its FOIA requests that were sent to the Department of Justice and various constituent agencies of DOJ, the Department of Defense and various constituent agencies of DoD, and the Central Intelligence Agency.  The James Madison Project also requests leave to amend its Complaint under Federal Rule of Civil Procedure 15(a).  The Court will deny Plaintiff's motion for leave to file an amended complaint and grant in part and deny in part Defendants' motion for summary judgment.

### I.  FACTS

Plaintiff is The James Madison Project, "a non-partisan organization established in 1998 to promote government accountability and the reduction of secrecy, as well as educating the public on issues relating to intelligence and national security."  Compl. [Dkt. 1] ¶ 3.  Founded by Mark Zaid, The James Madison Project is "always looking for ways to better develop the laws and policies surrounding the Freedom of Information and Privacy Acts, and foster greater openness in our society without unnecessarily infringing upon any individual's right to privacy."

James Madison Project, *About The James Madison Project*, www.jamesmadisonproject.org (last visited Sept. 15, 2016).

Plaintiff requested records from the Executive Office for the United States Attorneys (EOUSA) and the DOJ Civil Division, both within Defendant DOJ; the Navy and the Defense Intelligence Agency (DIA), both within Defendant DoD; and Defendant CIA.  The identical requests "specifically sought copies of records, including cross-references, pertaining to the Book "No Easy Day: The Firsthand Account of the Mission that Killed Osama Biden Laden [sic]." (*No Easy Day*).  Compl. ¶ 7.  Plaintiff sought:

1. Legal analyses of the extent to which the author of *No Easy Day*, identified by the pseudonym Mark Owen ("Mr. Owen"), was bound by non-disclosure agreements to submit written manuscripts for pre-publication review;

2. Analyses of the extent to which information contained within the published version of *No Easy Day* remains properly classified;

3. Any "damage" or "harm" assessments made regarding the impact that the disclosure of any properly classified information has had upon the national security of the United States;

4. Legal analyses of the viability of taking legal action against Mr. Owen, including civil and/or criminal litigation;

5. Any documentation memorializing analyses of administrative measures that could be taken against Mr. Owen, including with respect to his continued eligibility for access to classified information; and

6. Legal analyses of the viability of taking legal action against the Penguin Group USA, the company that published *No Easy Day*.

*Id.* ¶ 8.  The period of time from which records were sought was January 1, 2011 to the date of acceptance of the request at each recipient.  *See id.*  It is to be noted that Plaintiff claims no relationship with Mr. Owen or his real-life counterpart.

### A. DOJ Civil Division

The Civil Division "represents the United States, its departments and agencies, Members of Congress, Cabinet Officers, and other federal employees in any civil or criminal matter within its scope of responsibility."  DOJ, *About the Civil Division*, www.justice.gov/ civil/about (last visited Sept. 15, 2016).  The Civil Division acknowledged receipt of Plaintiff's July 30, 2014 FOIA request by letters dated July 31, 2014 and August 18, 2014.  Declaration of Angie E. Cecil [Dkt. 9-1] (Cecil Decl.)  ¶¶ 3-5.  By letter dated September 12, 2014, the Civil Division provided its final response, informing Plaintiff that it could not release records requested in items 1, 4, and 5 because "without consent, proof of death, or an overriding FOIA public interest, disclosure of law enforcement records concerning an individual would constitute a clearly unwarranted invasion of personal privacy."  Cecil Decl. ¶ 5 (citing 5 U.S.C. §§ 552(b)(6), (7)(C) (2006 & Supp. II 2010)).  The final response further stated that, regarding items 3 and 6, "'any information related to such assessments or legal analyses that may exist is protected from disclosure under the FOIA pursuant to 5.U.S.C. § 552(b)(5),' citing the deliberative process privilege, the attorney work product privilege, and the attorney-client privilege."  *Id*.  In further response, the Civil Division informed Plaintiff that it was referring records responsive to item 2 to the DoD for processing and direct response.  *Id.*; *see id.*, Ex. D (final response letter).

Because "disclosure of law enforcement records . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy," the Civil Division did not conduct a search for records responsive to items 1, 4, and 5 of Plaintiff's request.  *Id*., Ex. D at 1.  The Cecil Declaration explains that:

> [I]tem 1 sought "legal analyses of the extent to which the author . .
> . was bound by non-disclosure agreements to submit written

> manuscripts for pre-publication review."   Item 4 sought "legal
> analyses of the viability of taking legal action against Mr. Owen."
> Item 5 sought "any documentation memorializing analyses of
> administrative measures that could be taken against Mr. Owen."

*Id.* ¶ 9.  Plaintiff proffered no consent or proof of death and the Civil Division rejected its

argument that Mr. Owen had diminished privacy rights due to the publicity and fame of his book

so that there was an overriding public interest.  In addition, the Civil Division stated that

Plaintiff's argument that "releasing the records would shed light on the government's

investigation of the matter," *id.* ¶ 10, did "not constitute an overriding public interest to diminish

an individual's privacy interests as the subject of an investigation, particularly such a sensitive

investigation involving the potential release of classified, national security information."  *Id.*

¶ 11.

As to items 2, 3 and 6 of Plaintiff's FOIA request, the Division identified those

attorneys most likely to have responsive records.  These persons were all members of the Federal

Programs Branch.[1]  "In response to item 2 of the request, the Division attorneys located one

document, which originated with DOD [sic]."  *Id.* ¶ 12.  Determination of whether that record

could be released was referred to DoD.  *See id.*, Ex. D at 1.[2]  "In response to items 3 and 6 o[f]

the request, Division attorneys identified a volume of records."  *Id.* ¶ 12.  Thereafter, DOJ

---

[1]  The Federal Programs Branch of the Civil Division "litigate[s] on behalf of approximately 100
federal agencies, the President, Cabinet officers, and other government officials."  DOJ, Federal
Programs Branch, www.justice.gov/civil/federal-programs-branch (last visited Sept. 15, 2016).

[2]  DoD responded directly to Plaintiff on Nov 5, 2014, withholding the referred record in full
under FOIA Exemptions 1 and 5.  Declaration of Mark H. Herrington [Dkt. 9-3] (Herrington
Decl.) ¶ 12, Ex. C.  Although informed it had sixty (60) days to file an administrative appeal,
Plaintiff did not appeal.  *Id.*

determined that the searches were complete. *Id.* ¶ 13.  Records responsive to request items 3 and 6 were withheld under Exemption 5, 5 U.S.C. § 552(b)(5), based on attorney work product, attorney-client communications, and the deliberative process privilege. *Id.* ¶¶ 14-17.  No segregable information was identified.  *Id.* ¶ 18.

Further, despite the requirement that an agency identify the volume of responsive records withheld in whole and a description of the individual records withheld, the Civil Division did not do so, based on Ms. Cecil's determination that "revealing the volume of responsive records or describing the individual documents withheld could indicate the level of importance associated with a particular issue . . . , [including] the attorneys' strategies or areas of emphasis in their legal analyses, or the lack thereof." *Id.* ¶ 20.  She added that, "[p]articular to this request," revealing a volume estimate of records reflecting any assessment of damage or harm to the United States or the viability of taking legal action against the publisher could reveal the emphases placed on each aspect of impact and, thus, attorney strategies and work product. *Id.*

Plaintiff appealed by letter dated September 15, 2014. *See id.*, Ex. E.  The Office of Information Policy (OIP), DOJ, affirmed the Civil Division's final response by letter dated January 21, 2015. *See id.*, Ex. G.

### B.  EOUSA

Plaintiff submitted its *No Easy Day* FOIA request to EOUSA by email dated January 30, 2014.  Declaration of John Kornmeier [Dkt. 9-2] (Kornmeier Decl.) ¶ 3.  EOUSA issued its final response by letter dated December 8, 2014. *Id.* ¶ 5.  That letter stated that EOUSA had searched the U.S. Attorney's Office for the Eastern District of Virginia and located no responsive records. *Id.*, Ex. B.  It specifically informed Plaintiff that its December 8 letter was its final decision and that if Plaintiff were not satisfied, it had sixty (60) days to file an administrative appeal. *Id.*  Plaintiff did not file an administrative appeal. *Id.* ¶ 6.

Plaintiff states that it never received any response from EOUSA and that it had no obligation to exhaust administrative remedies.  Following Defendants' filing of the Motion to Dismiss, Plaintiff submitted a second, identical set of FOIA requests to EOUSA on February 12, 2016.  *See* Mot. to Amend, Ex. 3 [Dkt. 13-6].  Plaintiff has received no substantive response from EOUSA regarding this FOIA request.  Plaintiff moved to amend its Complaint to include claims against EOUSA related to its second, 2016, *No Easy Day* FOIA request.

### C.  DoD

Six months later, on July 30, 2014, Plaintiff submitted its *No Easy Day* FOIA request directly to DoD.  Herrington Decl. ¶ 3.  DoD responded on February 10, 2016.  *Id.* ¶ 4. DoD informed Plaintiff that responsive records existed, but it was withholding them under FOIA Exemption 5.  *Id.*, Ex. B.  Further, DoD stated that it could not provide the number of records withheld, the dates of such records, or a description of them without compromising the information Exemption 5 was designed to protect.  *Id.*  Because DoD's response occurred after the commencement of this litigation, Plaintiff's administrative appeal rights are moot.  *See Bayala v. Dep't of Homeland Security*, 827 F.3d 31, 35-36 (D.C. Cir. 2016).

### D.  Navy

The Complaint alleges that Plaintiff submitted by fax its *No Easy Day* FOIA request to Navy on July 30, 2014.  Compl. ¶ 25.  Navy has submitted a declaration in this Court that states that Navy has searched and has found no record of ever receiving Plaintiff's *No Easy Day* FOIA request.  Declaration of Robin L. Patterson [Dkt. 9-4] (Patterson Decl.) ¶ 4.  Navy searched its online case management system and the Naval Special Warfare Command—the Navy component most likely to maintain responsive records—and did not locate any record of the request.  *Id.*  Plaintiff challenges that response with the submission of a fax cover sheet that indicates that Plaintiff sent a fax to Navy on August 2, 2014, and that the fax was successfully

"transmitted."  *See* Mot. to Amend, Ex. 1 [Dkt. 13-4]; *id.*, Ex. 2 [Dkt. 13-5] ¶ 5.  Plaintiff assails

Navy's arguments here and demands discovery into the operation of Navy's fax machine.

        Following Defendants' filing of the Motion to Dismiss, Plaintiff submitted a

second, identical FOIA request to Navy on February 24, 2016.  *See* Mot. to Amend, Ex. 3 [Dkt.

13-7].  Plaintiffs have received no substantive response from Navy regarding this second FOIA

request.  Plaintiff moved to amend its Complaint to include claims against Navy related to the

second *No Easy Day* FOIA request.

### E.  DIA

        Plaintiff submitted the *No Easy Day* FOIA request to DIA on July 30, 2014.

Declaration of Alesia Y. Williams [Dkt. 9-5] (Williams Decl.) ¶ 5.  DIA initiated a search of its

two primary databases on August 11, 2014, using the term "*No Easy Day.*"  *Id.* ¶ 6.  It identified

two responsive records, both of which originated at other agencies.  *Id.* ¶ 8.  DIA referred one of

the records to Navy and the other to the National Security Agency (NSA), *id.*, and notified

Plaintiff of the referrals on February 1, 2016.  *See id.* ¶ 12; *id.*, Ex. C.  Navy responded directly

to Plaintiff on April 15, 2015 and released the responsive record in its entirety.  *See* Compl. ¶ 30.

        NSA responded directly to Plaintiff by letter dated January 29, 2016.  *See* NSA

Letter [Dkt. 9-10].  NSA told Plaintiff that the responsive record referred to it by DIA is a

summary of press reports and that producing the record would violate NSA's subscription

contracts with its news services.  *Id.*  Accordingly, NSA withheld the record in full under FOIA

Exemption 4.  *Id.*  "Plaintiff's counsel has informed Defense counsel that [Plaintiff] is not

interested in published press reports and does not intend to challenge NSA's withholding."  MSJ

[Dkt. 9] at 5. Further, Plaintiff "concedes that DIA conducted a legally sufficient search."  Opp'n

to MSJ [Dkt. 12] at 8 n.5.  Because NSA's response was received after the commencement of

this litigation, Plaintiff's administrative appeal rights are moot.  *See Bayala*, 827 F.3d at 35-36.

**F. CIA**

Plaintiff also submitted the same *No Easy Day* FOIA request to CIA on July 30, 2014. Declaration of Antoinette B. Shiner [Dkt. 9-6] (Shiner Decl.) ¶ 13. On August 4, 2014, CIA informed Plaintiff that its request was received and assigned reference number F-2014-02190. *Id.* ¶ 15; *see id.*, Ex. B. In a letter dated September 4, 2014, CIA informed Plaintiff that it would have no records responsive to item 1, that is, legal analyses of the extent to which the author of *No Easy Day*, identified by the pseudonym Mark Owen, was bound by non-disclosure agreements to submit written manuscripts for pre-publication review, and referred Plaintiff to DoD for that request. *Id.* ¶ 16; *see id.*, Ex. C. By letter dated January 22, 2016, CIA issued its final response to Plaintiff's FOIA request. *Id.* ¶ 18; *see id.*, Ex. D. In that letter, CIA told Plaintiff that it had identified and was withholding forty-one (41) records in their entirety under various FOIA Exemptions discussed below. *Id.*; *see also id.*, Ex. D. Because CIA's response was received after the commencement of this litigation, Plaintiff's administrative appeal rights are moot. *See Bayala*, 827 F.3d at 35-36.

**G. Procedural History**

Plaintiff sued all of the agencies listed above in a six-count Complaint on August 12, 2015. The Complaint alleges that each Agency and Department violated FOIA and that the claimed exemptions do not apply. Defendants answered on October 2, 2015. On February 11, 2016, Defendants moved for summary judgment. *See* MSJ. Plaintiff opposed and moved for leave to file a first amended complaint on March 24, 2016. *See* Opp'n to MSJ; Mot. to Amend. Defendants oppose Plaintiff's motion to amend. *See* Opp'n to Mot. to Amend [Dkt. 15]. The merits are fully briefed and both motions are ripe for resolution.

## II.  LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 15(a)

Under Federal Rule of Civil Procedure 15(a), a party may amend its pleading once as a matter of course before a responsive pleading is served.  Fed. R. Civ. P. 15(a).  Federal Rule of Civil Procedure 15(a) provides:

> (1) *Amending as a Matter of Course*.   A party may amend its pleading once as a matter of course within:
>
>> (A) 21 days after serving it, or
>>
>> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>
> (2) *Other Amendments*.  In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a).  "Motions to dismiss and for summary judgment do not qualify as responsive pleadings for the purposes of Rule 15."  *Boyd v. District of Columbia*, 465 F. Supp. 2d 1, 3 (D.D.C. 2006) (citing *James Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 283 (D.C. Cir. 2000); *Bowden v. United States*, 176 F.3d 552, 555 (D.C. Cir. 1999); *U.S. Info. Agency v. Krc*, 905 F.2d 389, 399 (D.C. Cir. 1990)).

"The grant or denial of leave lies in the sound discretion of the district court." *Adams v. Quattlebaum*, 219 F.R.D. 195, 197 (D.D.C. 2004) (citing *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)).  A court may deny a motion to amend if it finds "undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, [or] undue prejudice to the opposing party." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

When amendment is sought shortly after discovery ends but before summary judgment briefing has commenced, the prejudice to a defendant "if any, is minimal and it simply does not override the liberal standard that this Court must apply when determining whether to grant leave to amend under Fed. R. Civ. P. 15." *Ellis v. Georgetown Univ. Hosp.*, 631 F. Supp. 2d 71, 80 (D.D.C. 2009). Indeed, as the court noted in *Ellis*, "any potential prejudice would be ameliorated by supplemental discovery related to" the new allegations. *Id.* at 79. "[W]here a defendant has filed a dispositive motion . . . and plaintiff has opposed it, denial of permission to amend is proper." *Moldea v. New York Times Co.*, 793 F. Supp. 338, 338 (D.D.C. 1992) (citing *Wilderness Society v. Griles*, 824 F. 2d 4, 19 (D.C. Cir. 1987)).

Whether there has been an "unexplained delay in pleading" previously-known allegations is "another important consideration." *Societe Liz, S.A. v. Charles of the Ritz Grp., Ltd.*, 118 F.R.D. 2, 4 (D.D.C. 1987); *see also LaPrade v. Abramson*, No. 97-10, 2006 WL 3469532, at *5 (D.D.C. Nov. 29, 2006) (denying leave to file a fourth amended complaint where the plaintiff had "ample opportunity to include her proposed claims, but simply did not").

**B. Federal Rule of Civil Procedure 15(d)**

Rule 15(d) provides that a court "may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d).

The decision to grant leave under Rule 15(d) is discretionary. *Banks v. York*, 448 F. Supp. 2d 213, 214 (D.D.C. 2006). Although leave should be freely granted, leave may be denied when there has been undue delay or supplement would be prejudicial to the defendant. *Hall v. CIA*, 437 F.3d 94, 101 (D.C. Cir. 2006) ("Delay and prejudice are precisely the matters to be addressed in considering whether to grant motions for supplemental pleadings. . . .").

### C.  FOIA

FOIA requires federal agencies to release government records to the public upon request, subject to nine listed exceptions.  *See* 5 U.S.C. § 552(b); *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007).  A defending agency in a FOIA case must show that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information.  *See Sanders v. Obama*, 729 F. Supp. 2d 148, 154 (D.D.C. 2010), *aff'd sub nom. Sanders v. DOJ*, Civ. No. 10-5273, 2011 WL 1769099 (D.C. Cir. Apr. 21, 2011).  The adequacy of a search is measured by a standard of reasonableness and depends on the individual circumstances of each case.  *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).  The question is not whether other responsive records may exist, but whether the search itself was adequate.  *Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994).

Thus, to rebut a challenge to the adequacy of a search, an agency must show that "the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant."  *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (citing *Meeropol v. Meese*, 790 F.2d 942, 950-51 (D.C. Cir. 1986)).  Agencies are not required to search every record system, but agencies must conduct a good faith, reasonable search of those systems of records likely to possess the requested records.  *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990), *overruled in part on other grounds*, 79 F.3d 1172 (D.C. Cir. 1996).  An agency may prove the reasonableness of its search by a declaration by responsible agency officials, so long as the declaration is reasonably detailed and not controverted by contrary evidence or evidence of bad faith.  *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  Once an agency has provided such affidavits, the burden shifts

to the plaintiff to demonstrate the lack of a good faith search.  *See Maynard v. CIA*, 986 F.2d

547, 560 (1st Cir. 1993).  If a review of the record raises substantial doubt as to the

reasonableness of a search, especially in light of "well-defined requests and positive indications

of overlooked materials," then summary judgment may be inappropriate.  *Founding Church of*

*Scientology of Washington, D.C., Inc. v. NSA*, 610 F.2d 824, 837 (D.C. Cir. 1979).

### D.  Motion for Summary Judgment

Defendants contend that there is no genuine dispute as to any material fact and

that they are entitled to summary judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a);

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Summary judgment is properly

granted against a party who "after adequate time for discovery and upon motion . . . fails to make

a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986).  In ruling on a motion for summary judgment, a court must draw all justifiable

inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.

*Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "[t]he mere

existence of a scintilla of evidence" in support of its position.  *Id.* at 252.

FOIA cases are typically and appropriately decided on motions for summary

judgment.  *Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993); *Rushford v. Civiletti*, 485 F.

Supp. 477, 481 n.13 (D.D.C. 1980), *aff'd sub nom. Rushford v. Smith*, 656 F.2d 900 (D.C. Cir.

1981).  In a FOIA case, a court may award summary judgment solely on the basis of information

provided by the department or agency in affidavits or declarations when the affidavits or

declarations describe "the documents and the justifications for nondisclosure with reasonably

specific detail, demonstrate that the information withheld logically falls within the claimed

exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project*, 656 F.2d at 738; *see also Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973) (requiring agencies to prepare an itemized index correlating each withheld record, or portion thereof, with a specific FOIA exemption and the relevant part of the agency's nondisclosure justification).  An agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt" from FOIA's requirements.  *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal quotation marks and citation omitted).

### III.  ANALYSIS[3]

#### A.  Motion to Amend Complaint

Plaintiff seeks leave to amend the Complaint to add claims related to two FOIA requests submitted after this litigation began.  Plaintiff argues that because leave should be freely given and amending the Complaint to "rectify two administrative discrepancies" is in the interest of judicial economy, the Court should grant leave to amend.  Mot. to Amend at 3.  Defendants argue that Plaintiff's request should be more accurately understood as a motion for leave to supplement the Complaint because the additions involve actions and occurrences that happened after the commencement of litigation.

Plaintiff sent its additional *No Easy Day* FOIA requests to EOUSA and Navy on February 12 and 24, 2016, respectively.  By the date Plaintiff's Motion to Amend was filed,

---

[3] Section 552(a)(4)(B) gives this court subject matter jurisdiction over all actions brought under the Act, and makes this an appropriate forum for venue purposes.  5 U.S.C. § 552(a)(4)(B); *see Jones v. U.S. Nuclear Regulatory Comm'n*, 654 F. Supp. 130, 131 (D.D.C. 1987).  The Court's jurisdiction under the FOIA extends only to claims arising from the improper withholding of agency records. *See* 5 U.S.C. § 552(a)(4)(B); *see also Lazaridis v. DOJ*, 713 F. Supp. 2d 64, 66 (D.D.C. 2010) (citing *McGehee v. CIA,* 697 F.2d 1095, 1105 (D.C. Cir. 1983) (quoting *Kissinger v. Reporters Committee for Freedom of the Press,* 445 U.S. 136, 150 (1980))).

March 24, 2016, just over a month later, neither Agency had responded.  Despite the fact that Plaintiff has not appealed within the Agencies, "[a] requester 'shall be deemed to have exhausted [its] administrative remedies with respect to [its] request' if the agency does not respond to the FOIA request within 20 business days."  *Murphy v. EOUSA*, 789 F.3d 204, 207 n.1 (D.C. Cir. 2015) (citing 5 U.S.C. § 552(a)(6)(A)(i), (C)(i)).  Because at least 20 days passed between the receipt of the FOIA requests and Plaintiff's motion to amend the Complaint, Plaintiff adequately exhausted its administrative remedies.

Although Plaintiff characterizes the proposed amendments to its Complaint as "administrative discrepancies," they are in fact additional claims related to new FOIA requests. In a similar case, the Circuit defined an amendment adding FOIA claims regarding later FOIA requests as a supplement, rather than an amendment, and denied leave to file because of undue delay and prejudice to the defendant in that dispositive motions had already been filed.  *See Hall*, 437 F.3d at 100-01.  The same can be said here.  Despite being on notice from the date of Defendants' Answer on October 2, 2015, Plaintiff failed to submit renewed FOIA requests or move to amend the Complaint until after summary judgment briefing had begun and its opposition was due on March 24, 2016.  Plaintiff provides no reason for this delay.

This Court also finds prior rulings by colleagues to be completely distinguishable and not persuasive.  *The James Madison Project v. DOJ*, No. 16-227, Minute Order (D.D.C. issued March 10, 2016), was such a brand new case that no Assistant United States Attorney (AUSA) had been assigned to appear when The James Madison Project asked to file an amended complaint.  Therefore, no answer had been filed and no dispositive briefing commenced. Certainly no prejudice or other harm to defendant could have been demonstrated.  Similarly, in *The James Madison Project v. DOJ*, No. 16-116, Minute Order (D.D.C. issued February 26,

2016), no AUSA had been assigned to defend the case when The James Madison Project sought to file an amended complaint.  Both of these cases were barely nascent at the relevant time.  In *Matthew Cole v. CIA*, No. 09-1739, Minute Order (D.D.C. issued January 20, 2010), CIA's motion for summary judgment had just been filed when Mr. Cole asked to file an amended complaint without opposition from defendant CIA.

The circumstances here are materially different.  Defendants alerted Plaintiff that the Navy had never received their FOIA request and that EOUSA had substantively denied it, without appeal, when the Answer was filed on October 2, 2015.  Further, Defendants clearly demonstrated those facts in their motion for summary judgment and exhibits, filed on February 11, 2016.  At neither juncture did Plaintiff respond with the instant motion.  It would appear that only the preparation of Plaintiff's opposition caused a sudden realization of the "administrative discrepancies."  Mot. to Amend at 3.  But by then, lawyers at CIA, Navy, DIA, EOUSA, DOJ's Civil Division, and the Office of the United States Attorney had fully briefed the motion for summary judgment.  This was no small matter, requiring thorough review of all requests, searches, and results; preparation of affidavits as needed for each agency; coordination between counsel at five different federal entities and the AUSA; preparation of the motion for summary judgment, with its concomitant review and changes by five client agencies; and, least difficult, filing with the Court.  In the only case in which a motion to file an amended complaint was granted after so much work, the defendant agreed.  That is clearly not the case here.

The Court finds that Plaintiff's request should be deemed a motion to supplement the Complaint as the additions pertain to events "that happened after the date of the pleading to be supplemented."  Fed. R. Civ. P. 15(d).  Although leave should be freely granted, the Court finds leave to supplement is not proper here because there has been undue delay and further

delay would prejudice Defendants, who have already spent considerable time and effort briefing summary judgment on the issues presented in this case. *See Hall*, 437 F.3d at 101. Plaintiff's motion for leave to amend the Complaint will be denied.

### B. Motion for Summary Judgment

The first question, of course, is what agency is a proper Defendant? Given Plaintiff's acceptance of the adequacy of DIA's search and that the search identified only two records that originated elsewhere and were referred elsewhere, the Court will dismiss DIA. *See* Opp'n to MSJ at 8 n.5.

In addition, the Court finds that EOUSA has demonstrated that it responded to Plaintiff's *No Easy Day* FOIA request, that it searched the appropriate Office of the United States Attorney, and located no records. *See* Kornmeier Decl. Although Plaintiff counters that it never received EOUSA's letter and therefore never had an obligation to appeal, it proffers no argument here that the search itself was inadequate. *See* Opp'n to MSJ at 6-7. The Court finds no basis to question EOUSA's sworn declaration. EOUSA indicates a search was conducted in the relevant United States Attorney's Office and no records were located. *See* Kornmeier Decl. ¶ 4. Mr. Kornmeier's declaration also indicates EOUSA mailed Plaintiff a letter explaining that no records were located and outlining Plaintiff's appeal rights. *See id.* ¶ 5, Ex. B. Plaintiff failed to timely appeal and therefore failed to exhaust administrative remedies.[4] The Court will dismiss EOUSA as a defendant here.

---

[4] A district court properly grants an agency judgment on the pleadings when plaintiff "fail[s] to internally appeal the agenc[y's] denial[] and thus to exhaust its administrative remedies before seeking judicial review." *Freedom Watch, Inc. v. NSA*, 783 F.3d 1340, 1344 (D.C. Cir. 2015); *see also Sinito v. DOJ*, 176 F.3d 512, 516 (D.C. Cir. 1999) ("FOIA requires each requestor to exhaust administrative remedies" before seeking judicial review.).

As to Navy, which swears it can find no record of Plaintiff's 2014 *No Easy Day* FOIA request, this Court is not persuaded by Plaintiff's arguments that discovery is necessary or that this Court should not adopt the reasoning of *Ebling v. DOJ*, 796 F. Supp. 2d 52, 65-66 (D.D.C. 2011).  Although *Ebling* is not binding, it is persuasive.  In *Ebling*, Judge Kollar-Kotelly decided that a fax confirmation page that apparently verified that the plaintiff had submitted a fax was insufficient to undermine the "presumption of good faith" accorded to an agency affidavit that no such appeal was located.  *Id*.; *see also SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) ("Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'") (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).  In *Ebling*, the confirmation page was insufficient to show a timely appeal because it did not indicate what had been submitted in the fax itself.  Therefore, Judge Kollar-Kotelly found no reasonable basis for a fact finder to conclude that the fax sent actually included the specific FOIA appeal at issue.  *Ebling*, 796 F. Supp. 2d at 66.

Similarly, Plaintiff's evidence here shows only that it "transmitted" some fax to Navy on July 30, 2013 that was titled "FOIA Request."  *See* Mot. to Amend, Ex. 1.  The fax confirmation page is not sufficient evidence to counter sworn evidence that Navy has no record of receiving the *No Easy Day* FOIA request at issue.

Plaintiff argues that there is a genuine issue of material fact in dispute regarding its submission of a FOIA request to Navy in 2014.  It wants discovery into why Navy did not examine its fax machine after the instant Complaint was filed in August 12, 2015 to try to locate evidence of the fax that Plaintiff insists it submitted on July 30, 2014.  *See* Opp'n to MSJ at 4-6.  Plaintiff does not acknowledge that Navy never sent it a letter confirming receipt of its FOIA

request and that Plaintiff never inquired about the status of its request before commencing

litigation.  Nor does Plaintiff acknowledge that Navy processed the sole record referred to it by

DIA and released the record in its entirety.  *See* Compl. ¶ 30.  Plaintiff also fails to acknowledge

the huge number of FOIA requests submitted annually to Navy, *see* Reply in Supp. of MSJ [Dkt.

14] at 4-5 n.2 & n.3; *see also* Ex. A [Dkt. 14-1]; Ex. B [Dkt. 14-2], or explain its certainty that

the technology of a government fax machine would maintain a detailed record of faxes received

over a year earlier, after so much use, for purposes of discovery.

More significantly, Plaintiff forgets the applicable legal standard.  Plaintiff offers

no evidence that the Navy has acted in bad faith; rather, it just contends that it did, in fact, send a

FOIA request to Navy on July 30, 2013.  But the legal question is whether there is any basis to

weaken or remove the presumption of good faith given to the agency's affidavit that, after a

search, it has found no such request.  The Court finds not.  Navy will be dismissed as a

defendant.

The Court now turns to the main disputants.

### 1.  Civil Division

#### a.  *Reasonableness of the Search*

Under FOIA, an agency must undertake a search that is "reasonably calculated to

uncover all relevant documents."  *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  An

agency moving for summary judgment in a FOIA case must first demonstrate that it made a

good-faith effort to search for responsive materials in a manner "reasonably expected to produce

the information requested."  *Oglesby*, 920 F.2d at 68.  Where an agency affidavit avers that a

reasonable search was conducted, the agency is entitled to such a presumption of good faith.  *See*

*Defenders of Wildlife v. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004).  An affidavit can

be rebutted only when inadequate on its face or with evidence that the agency's search was not

made in good faith. *See id.* A plaintiff cannot rebut the good faith presumption that attaches to

an agency's affidavit "through purely speculative claims about the existence and discoverability

of other documents." *Brown v. DOJ*, 724 F. Supp. 2d 126, 129 (D.D.C. 2010). Hypothetical

assertions are insufficient to raise a material question of fact with respect to the adequacy of an

agency's search. *Oglesby*, 920 F.2d at 67.

Plaintiff argues that Defendants failed to move for summary judgment on the

adequacy of the searches and challenges the adequacy of the Civil Division's search due to a

"conclusory affidavit" that "is insufficient as a matter of law in demonstrating the adequacy of

the search." Opp'n to MSJ at 8. Civil Division's declaration avers with respect to Requests 2, 3,

and 6 that it identified the "attorneys most likely to have [responsive] records," contacted those

individuals, and collected and reviewed the records identified as responsive to the requests.

Cecil Decl. ¶¶ 12-13. The Court finds that the Cecil Declaration clearly states that the Civil

Division undertook a search that was "reasonably calculated to uncover all relevant documents."

*Weisberg*, 705 F.2d at 1351. Based on the presumption of good faith attributable to the Cecil

Declaration and Plaintiff's lack of specific claims regarding the inadequacy of the search, the

Court finds that the Civil Division conducted an adequate search.

### b.  *Glomar Response*[5]

Civil Division claims a categorical exemption under Exemptions 6 and 7(C) for

documents relevant to requests 1, 4, and 5 and therefore did not conduct a search. A *Glomar*

response allows an agency to "refuse to confirm or deny the existence of records where to

answer the FOIA inquiry would cause harm cognizable under an FOIA exception." *Wolf v. CIA*,

---

[5] *See Phillippi v. CIA*, 546 F.2d 1009, 1012 (D.C. Cir. 1976).

473 F.3d 370, 374 (D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982)).

"To show that a *Glomar* response is appropriate, the agency must explain why it can neither confirm nor deny the existence of responsive records." *Parker v. EOUSA*, 852 F. Supp. 2d 1, 10 (D.D.C. 2012) (citing *Phillippi*, 546 F.2d at 1013 ("Adapting these procedures to the present case would require the Agency to provide a public affidavit explaining in as much detail as is possible the basis for its claim that it can be required neither to confirm nor to deny the existence of the requested records.")). When evaluating a categorical exemption, the Court does not consider the actual content of the documents, but instead evaluates whether the potential harm created by revealing the existence of the documents is protected by a FOIA exemption. *See Wolf*, 473 F.3d at 374 ("In determining whether the existence of agency records *vel non* fits a FOIA exemption, courts apply the general exemption review standards established in non-Glomar cases."). The Court therefore considers whether revealing the existence of documents related to Mr. Owen's potential violation of non-disclosure agreements or considered legal or administrative actions against Mr. Owen constitute an "invasion of personal privacy" under either Exemption 6 or 7(C).

Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "The term 'similar files' is broadly interpreted, such that Exemption 6 protects from disclosure all information that 'applies to a particular individual' in the absence of a public interest in disclosure." *Lardner v. DOJ*, 638 F. Supp. 2d 14, 23 (D.D.C. 2009) (quoting *Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982)). The threshold is "fairly minimal," and "[a]ll information which applies to a particular individual is covered by

Exemption 6, regardless of the type of file in which it is contained." *Washington Post Co. v. Dep't of Health & Human Servs.*, 690 F.2d 252, 260 (D.C. Cir. 1982) (quoting *Washington Post*, 456 U.S. at 602) (internal quotation marks omitted).

Exemption 6 requires "a balancing of the individual's right of privacy against the preservation of the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372 (1976) (internal quotation marks and citation omitted); *see DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989). The privacy interest at stake belongs to the individual, not the agency. *See Reporters Comm. for Freedom of the Press*, 489 U.S. at 763-65; *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989) (noting an individual's significant privacy interest "in avoiding the unlimited disclosure of his or her name and address"). It is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest. To satisfy, the public interest must be significant. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

Similarly, Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Courts apply a balancing test to determine whether disclosure is exempt under 7(C). Courts "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." *Sussman v. United States Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007) (internal quotations and citations omitted).

With respect to the Court's inquiry into the privacy interests and public interests at stake, the analysis under Exemptions 6 and 7(C) is substantially similar. *Stern v. FBI*, 737 F.2d 84, 91 (D.C. Cir. 1984); *see, e.g.*, *Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991).

The Civil Division withheld all category 1, 4, and 5 records because they contained information related to the author of *No Easy Day* and the request did not indicate that Plaintiff had the consent of Mr. Owen to obtain the records or proof of Mr. Owen's death. *See* Cecil Decl. ¶¶ 9-10. Plaintiff contends that Mr. Owen's privacy interest is diminished "due to the public and widely-reported nature of both Mr. Owen's actions and the U.S. Government's views on those actions from a legal perspective." Opp'n to MSJ at 30. The Civil Division, insists that "[i]nterest in the government's investigation does not constitute an overriding public interest to diminish an individual's privacy interests as the subject of an investigation, particularly such a sensitive investigation involving the potential release of classified, national security information." Cecil Decl. ¶ 11.

"[P]rivacy interests are particularly difficult to overcome when law enforcement information regarding third parties is implicated." *Martin v. DOJ*, 488 F.3d 446, 457 (D.C. Cir. 2007). Despite Plaintiff's argument that Mr. Owen's privacy interests are diminished due to the fact that some information has been publically reported, the D.C. Circuit found in *Martin* that "a person's privacy interest in law enforcement records that name him is not diminished by the fact that the events they describe were once a matter of public record." *Id*. (citing *DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 779-80 (1989)). The Court finds the same here. Mr. Owen's privacy interests in protecting his law enforcement records from disclosure to third parties is not overcome by any public interest and the Civil Division properly withheld records related to requests 1, 4, and 5 under Exemptions 6 and 7(C).

c. *Exemptions*

To prevail on summary judgment in a FOIA action, a defendant must also demonstrate that the information withheld from disclosure is exempt and that the agency segregated non-exempt materials. *See* 5 U.S.C. § 522(a)(4)(B), (b). An agency may satisfy this burden by providing "a relatively detailed justification through the submission of an index of documents, known as a *Vaughn* Index, sufficiently detailed affidavits or declarations, or both." *Ctr. for Int'l Envtl. Law v. Office of U.S. Trade Representative*, 237 F. Supp. 2d 17, 22 (D.D.C. 2002) (internal quotations and citations omitted); *see also Vaughn*, 484 F.2d 820.

FOIA Exemption 5 allows withholding "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). It protects records that are "normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). Exemption 5 covers "the attorney-client privilege, the attorney work-product privilege, [and] the executive deliberative process privilege." *Rockwell Int'l Corp. v. DOJ*, 235 F.3d 598, 601 (D.C. Cir. 2001). "To qualify as exempt under this section, a document must meet two conditions: 'its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it.'" *Stolt-Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728, 733 (D.C. Cir. 2008) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)).

The Civil Division relies on Exemption 5 and the three cited privileges to decline to release records in response to parts 3 and 6 of Plaintiff's *No Easy Day* FOIA request. Plaintiff complains that the Civil Division has inadequately described the records withheld and has produced no *Vaughn* index. *See generally Vaughn*, 484 F.2d 820. It demands a description of each withheld record.

Ms. Cecil states that "[t]he attorneys reviewing the underlying subject matter of the request created the analyses and assessments responsive to items 3 and 6 of the request in anticipation of and in the midst of litigation."  Cecil Decl. ¶ 15.  These "analyses reveal the thoughts, legal analysis, strategies, and opinions of Division attorneys handling the matters."  *Id.*  Ms. Cecil adds:

> Particularly, the analyses and assessments review the potential harm created by the improper disclosure of classified information in *No Easy Day* as part of the attorneys' overall review of the potential legal violations by the book's author.  The responsive records also cover the viability of legal action against the book's publisher.

*Id.*

Plaintiff recognizes that "there is no fixed ruled establishing what a *Vaughn* Index must look like, and a district court has considerable latitude to determine its requisite form and detail in a particular case."  *ACLU v. CIA*, 710 F.3d 422, 432 (D.C. Cir. 2013) ("*ACLU II*").[6]  It argues that categorical descriptions can suffice "so long as [an agency's] definitions of relevant categories are 'sufficiently distinct to allow a court to determine . . . whether the specific claimed exemptions are properly applied.'"  *Gallant v. NLRB*, 26 F.3d 168, 173 (D.C. Cir. 1994) (citation omitted).  Further, Plaintiff posits that the categorical descriptions by the Civil Division are the equivalent of a "no number, no list" response, which is justifiable only in unusual circumstances and only by a "'particularly persuasive affidavit.'"  Opp'n to MSJ at 12 (citing *ACLU III*, 109 F.

---

[6]  There are three *ACLU v. CIA* opinions concerning ACLU's FOIA request for records detailing the use of drone strikes in foreign countries.  The first, *ACLU v. CIA*, 808 F. Supp. 2d 200 (D.D.C. 2011) (Collyer, J.) (*ACLU I*) granted summary judgment to the CIA's "no numbers/no list" response because records, if any, would be classified.  The second, *ACLU v. CIA*, 710 F.3d 422 (D.C. Cir. 2013) (*ACLU II*) reversed in part based on subsequent statements from executive branch officials that acknowledged drone use by CIA.  The third is *ACLU v. CIA*, 109 F. Supp. 3d 220 (D.D.C. 2015) (Collyer, J.) (*ACLU III*), which granted summary judgment to CIA based on negotiated changes to the FOIA request and additional generalized information from the CIA.

Supp. 3d at 234 and *ACLU II*, 710 F.3d at 433).  Plaintiff insists that the Civil Division's failure to state the number of records located and to give any information about their subject matters is a "no number/no list" response that *ACLU II* has found insufficient.  While it quotes *ACLU II* correctly, Plaintiff misplaces that decision into this very different fact pattern.

In *ACLU II*, the Circuit repeated its previous holdings that "a *Vaughn* index may also contain brief or categorical descriptions when necessary to prevent the litigation process from revealing the very information the agency hopes to protect."  *ACLU II*, 710 F.3d at 432 (citing *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 145-46 (D.C. Cir. 2006)).  In this instance, lawyers asked lawyers for copies of the recipient lawyers' "[l]egal analyses" and "'damage' or 'harm' assessments" concerning client interests as a result of the publication of *No Easy Day*.  Compl. ¶ 8.  Ms. Cecil has responded by addressing the nature of the legal work required by each topic of the FOIA request.  The specificity of Plaintiff's request itself identifies "whether the *contents*—as distinguished from the *existence*—of the officially acknowledged records may be protected from disclosure . . . ."  *ACLU II*, 710 F.3d at 432 (internal quotation and citation omitted).  The *contents* were legal analyses of the topics to which the FOIA request was directed and Ms. Cecil described the contents of the records in her declaration.  In contrast, a "no number, no list" response declines to describe or enumerate the "number, types, dates, or other descriptive information about the[] responsive records."  *ACLU II*, 710 F.3d at 433 (internal quotation and citation omitted).

The Civil Division also withheld the volume of records sought because those numbers "could indicate the level of importance associated with a particular issue," and, thus, something of the protected attorney work product.  Cecil Decl. ¶ 20.   Ms. Cecil stated that:

> [R]evealing the volume of responsive records or describing the
> individual documents withheld could indicate the level of

> importance associated with a particular issue for the attorneys
> working on the underlying legal matters.  Providing a volume
> estimate could reveal the attorneys' strategies or areas of emphasis
> in their legal analyses, or the lack thereof.

*Id.*  The Civil Division wanted to protect information about the degree of importance its attorneys gave to reviewing damage or harm estimates, the degree of importance its attorneys gave to analyzing or assessing how any classified disclosure could harm the United States, and the degree of importance its attorney gave to the viability of a suit against the publisher of *No Easy Day*.  *Id.*

The Court finds this explanation reasonable and credible to explain why the Civil Division did not provide Plaintiff with the numbers of records identified on a topic-by-topic basis, which would usually be the norm in responding to a FOIA request.  Having asked for records concerning three separate issues—legal analyses and assessments of how much of *No Easy Day* remained classified; how much damage or harm might result to the U.S. as a result; and how vulnerable to suit was the book's publisher—the number of records individually responsive to each request could distinctly reveal the emphases (or lack thereof) given to each topic during the lawyers' analyses and assessments.

Lawyers seeking other lawyers' legal analyses and damage assessments should not be surprised or offended that such records would be privileged as attorney work product, attorney-client communications, and in the federal government, by the deliberative process privilege.  Plaintiff does not contest that the asserted privileges apply.  Plaintiff actually makes no argument to the contrary but only complains about the lack of specificity in Ms. Cecil's declaration as to each record that was located.  The Court finds that the descriptions of records the Civil Division located are properly categorical to avoid "revealing the very information the agency hopes to protect."  *ACLU* II, 710 F.3d at 432.

For the foregoing reasons, the Court finds the Civil Division properly withheld records under Exemptions 5.

### d. Segregability of Non-Exempt Information

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. 5 U.S.C. § 552(b); *see Trans-Pacific Policing Agreement v. United States Customs Serv.*, 177 F.3d 1022 (D.C. Cir. 1999). The court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of Cal. v. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)). To demonstrate that all reasonably segregable material has been released, the agency must provide a detailed justification rather than conclusory statements. *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

The Court has reviewed the Civil Division's declaration and finds that it adequately explains that no portions of the records were segregable. *See* Cecil Decl. ¶ 18. For the foregoing reasons, Civil Division's motion for summary judgment will be granted.

### 2. DoD

An agency moving for summary judgment in a FOIA case must first demonstrate that it made a good-faith effort to search for responsive materials in a manner "reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68. DoD has not even indicated that a search was conducted, but instead attempts a *Glomar* response that all records that might be located would be exempt under Exemptions 5 or 6. *See* Herrington Decl. ¶¶ 5-11. The Agency bears the burden on its motion for summary judgment.

The Court finds DoD's categorical use of Exemption 5 inappropriate.  Although Plaintiff's requests seek "[l]egal analyses" and "assessments," DoD cannot know, without searching, whether some of its responsive records may contain segregable, non-exempt information and DoD has not articulated why "it can neither confirm nor deny the existence of responsive records," as required in a *Glomar* response.  *Parker*, 852 F. Supp. 2d at 10.

DoD's Exemption 6 argument fares no better.  The Court does not disagree that Exemption 6 may permit DoD to withhold personally identifying information of its junior personnel, but a categorical refusal to search is not sufficient.  DoD does not argue that all documents responsive to Plaintiff's *No Easy Day* FOIA request would contain personally identifying information of DoD personnel and in fact, without searching, DoD cannot aver that any responsive document contains such information.  DoD's categorical use of Exemptions 5 and 6 are insufficient responses to Plaintiff's *No Easy Day* FOIA request.

For the foregoing reasons, DoD's motion for summary judgment will be denied without prejudice.

### 3.  CIA

#### a.  *Reasonableness of the Search*

Plaintiff argues that CIA failed to move for summary judgment based on the adequacy of its search, but raises no specific complaints with the actual searches conducted.  The Court finds CIA did argue its search was adequate in its motion for summary judgment and proceeds to evaluate the search itself.

CIA began by identifying the directorates most likely to have responsive records: the Director's Area and Directorate of Support.  *See* Shiner Decl. ¶ 19.  Within each of those directorates, the offices most likely to possess responsive records were also identified.  *See id.*

¶ 20.  Each office conducted a search of their electronic and hard copy files using search terms including:

> No Easy Day, Penguin Group, Mark Owen, release, information, Osama Bin Laden, damage, UBL, access to classified, leak, disclosure, harm, PRB, Publications Review Board, Publications Review Division, Bissonnette, PRD, James Madison Project, legal analyses, and legal action.

*Id*. ¶¶ 21, 23.  In total, the offices located 41 responsive records.  *See id*. ¶¶ 22, 24.  Based on review of the CIA declaration and the presumption of good faith, the Court finds that a search "reasonably calculated to uncover all relevant documents" was conducted.  *Weisberg*, 705 F.2d at 1351; *see also Defenders of Wildlife*, 314 F. Supp. 2d at 8.

### b. *Exemptions*

#### i. *Exemption 1*

Under Exemption 1, FOIA does not require the production of records that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order."  5 U.S.C. § 552(b)(1).  CIA relies upon Executive Order 13526 (E.O. 13526), 75 Fed. Reg. 707 (Dec. 29, 2009), which governs the classification and protection of national security information, to withhold the responsive records it located.  *See* Shiner Decl. ¶ 27.  Information can be properly classified under E.O. 13526 if four requirements are met:  (1) an original classification authority has classified the information; (2) the United States Government owns, produces, or controls the information; (3) the information pertains to one or more of eight protected categories listed in Section 1.4 of the Executive Order; and (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in a specified level of damage to the national security, and the original classification authority is able to identify or describe the damage.  E.O. 13526 § 1.1(a).

CIA has made an affirmative showing that: (1) all of the withheld records were classified by Ms. Shiner, an original classification authority, as TOP SECRET, SECRET, or CONFIDENTIAL; (2) all of the withheld records are owned, produced, or controlled by the United States Government; and (3) that disclosure of the withheld records could reasonably be expected to result in damage to national security. *See* Shiner Decl. ¶¶ 28-29, 31. The only disputes relate to Ms. Shiner's classification of records as those listed in E.O. 13526 § 1.4. *See* Opp'n to MSJ at 12-13; Shiner Decl. ¶ 30.

Plaintiff argues that "it is rather surprising" that information related to CIA's "'presence in certain foreign countries, the location of undisclosed details of certain covert operations, intelligence collection techniques, and clandestine relationships with certain foreign governments'" would be located in records responsive to its FOIA requests. Opp'n to MSJ at 12 (quoting Shiner Decl. ¶ 35). This is not surprising. Osama bin Laden was in Afghanistan and it took years of effort to pin point his location. Divulging the particulars of how that was accomplished could reasonably harm the United States. And, despite Plaintiff's surprise, "the text of Exemption 1 itself suggests that little proof or explanation is required beyond a plausible assertion that information is properly classified." *Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007). Ms. Shiner explained in detail the general types of information contained in the responsive records, including intelligence sources, intelligence methods, clandestine intelligence activities, and U.S. foreign relations and foreign activities. Ms. Shiner cannot be expected to detail the specific classified information contained in the responsive records, as that would nullify the need to withhold the records. The Court finds no reason to doubt the plausible assertions made by Ms. Shiner and finds CIA properly withheld records under Exemption 1.

ii.   *Exemption 3*

Exemption 3 protects records that are "specifically exempted from disclosure by statute . . . if that statute (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).  Exemption 3 is different from other FOIA exemptions in that it "depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage."  *Goland*, 607 F.2d at 350; *Ass'n of Retired R.R. Workers v. U.S. R.R. Ret. Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987).  Hence CIA "need only show that the statute claimed is one of [the] exemption[s] as contemplated by Exemption 3 and that the withheld material falls within the statute."  *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009) (citing *Fitzgibbon v. CIA*, 911 F.2d 755, 761-62 (D.C. Cir. 1990)).

CIA withheld certain records in compliance with the Central Intelligence Agency Act of 1949, 50 U.S.C. § 3501 *et seq.* (CIA Act) and the National Security Act, 50 U.S.C. § 3021 *et seq.* (NSA Act).  Section 6 of the CIA Act exempts CIA from the provisions "of any [] law" that require the "publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by [CIA]."  50 U.S.C. § 3507.  CIA declares that "[m]any of the documents at issue contain information concerning the organization, names, or official titles of personnel employed by the CIA."  Shiner Decl. ¶ 47.  Plaintiff argues that CIA's explanation indicates it is "applying an overly broad definition of the scope of information protected by the CIA Act."  Opp'n to MSJ at 16.  However, CIA specifically indicates that the information being withheld concerns the organization, names, and titles of personnel, which is

material that has consistently been permitted to be withheld.  *See Larson*, 565 F.3d at 865;

*Linder v. DoD*, 133 F.3d 17, 25 (D.C. Cir. 1988).

Section 102A(i)(1) of the NSA Act provides that the Director of National

Intelligence "shall protect intelligence sources and methods from unauthorized disclosure."  50

U.S.C. § 3024.  In accordance with the NSA Act and Executive Order 12333,[7] the Director of the

CIA is responsible for protecting CIA intelligence sources and methods from unauthorized

disclosure.  Plaintiff argues that CIA's declaration is unclear because it does not specify whether

the withheld records themselves are "'sources of intelligence information' or if they merely

contain information that would reveal 'sources of intelligence information.'"  Opp'n to MSJ at

17.  The Shiner Declaration, however, specifically states that it is invoking the NSA Act "to

withhold information *that would reveal* intelligence sources and methods."  Shiner Decl. ¶ 49.

(emphasis added).  Plaintiff's arguments are without merit and the Court finds CIA has

adequately withheld records under Exemption 3.

### iii.  Exemption 5

CIA also relies on Exemption 5, specifically the deliberative process privilege and

attorney-client privilege.  The deliberative process privilege exempts from disclosure records

"reflecting advisory opinions, recommendations and deliberations comprising part of a process

by which governmental decisions and policies are formulated."  *NLRB v. Sears, Roebuck*, 421

U.S. at 150.  Further, Exemption 5 "covers recommendations, draft documents, proposals,

suggestions, and other subjective documents which reflect the personal opinions of the writer

rather than the policy of the agency."  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d

---

[7] Section l.6(d) of Executive Order 12333, as amended by Executive Order 13470 (July 30, 2008), requires the CIA Director to "[p]rotect intelligence and intelligence sources, methods, and activities from unauthorized disclosure . . . ."

854, 866 (D.C. Cir. 1980).  Such records are protected in order to promote "the quality of agency

decisions, by protecting open and frank discussion among those who make them within the

Government."  *Klamath Water*, 532 U.S. at 9 (internal quotation and citation omitted); *accord*

*Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C. Cir. 1997) (the quality of decision-making would

be seriously undermined if agencies were forced to operate in a "fish bowl" since open and frank

discussion regarding legal or policy matters would be impossible).

   To qualify for withholding, material must be both predecisional and deliberative.

*Judicial Watch, Inc. v. Dep't of Energy*, 412 F.3d 125, 129 (D.C. Cir. 2005).  In *Petroleum*

*Information Corp. v. Department of the Interior*, 976 F.2d 1429 (D.C. Cir. 1992), the D.C.

Circuit held that:

> [a] document is predecisional if it was prepared in order to assist an
> agency decisionmaker in arriving at his decision, rather than to
> support a decision already made.  Material is deliberative if it
> reflects the give-and-take of the consultative process.  [The D.C.
> Circuit's] recent decisions on the deliberativeness inquiry have
> focused on whether disclosure of the requested material would tend
> to discourage candid discussion within an agency.

*Id*. at 1434 (internal quotations and citations omitted).  Plaintiff argues that CIA's declaration is

insufficient to determine whether the withheld records are actually predecisional in their entirety

or are segregable.  Plaintiff mischaracterizes CIA's declaration.  The declaration specifically

states "CIA invoked the deliberative process privilege to withhold *draft* versions of various

memoranda, letters, charts and other documents *which contain comments, or tracked changes,*

made in connection with inter and intra-agency *pre-decisional* discussions."  Shiner Decl. ¶ 52

(emphasis added).  The declaration is extremely clear that the records are drafts used in pre-

decisional discussions; draft records have routinely been protected from FOIA using the

deliberative process privilege.  *See Coastal States Gas*, 617 F.2d at 866.[8]  Therefore, CIA has

properly withheld records under Exemption 5.

*iv.   Exemptions 6 and 7(C)*[9]

CIA withheld records under Exemption 6 that contained "personal identifying

information about private citizens including CIA employees and employees of another agency,"

Shiner Decl. ¶ 55, and under Exemption 7(C) that contained "personal information of individuals

associated with the investigation into the publishing of [*No Easy Day*]," *id*. ¶ 62.  Plaintiff raises

no objection to CIA's use of Exemption 6 and, therefore, concedes that the exemption was

proper.  Plaintiff's only argument regarding Exemption 7(C) is that CIA has not indicated whose

privacy interests are at stake, but merely alludes to "individuals associated with the investigation

into the publishing of [*No Easy Day*]." *Id*.  Inasmuch as CIA has stated that both CIA employees

and employees "of another agency" were "associated with the investigation," and the privacy

interest at issue pertains only to them or others named within the records, it is not difficult to

reasonably conclude whose rights are at issue.  In addition, the records reasonably can be

understood to pertain to the personal information of Mr. Owen, the author of *No Easy Day*, and

relevant witnesses.  As discussed above with respect to the Civil Division, however, Plaintiff has

failed to show that the public interest outweighs Mr. Owen's privacy interests (or anyone else's)

in the protection of these records.  *See* supra at 22.  CIA has properly withheld records under

Exemptions 6 and 7(C).

---

[8] Plaintiff raises no specific arguments related to CIA's claim of attorney-client privilege on some of the records that were also withheld under the deliberative process privilege and, because the Court has already found CIA's use of the deliberative process privilege was valid, it need not address the attorney-client privilege.

[9] The framework for evaluating Exemptions 6 and 7(C) are discussed above.  *See supra* at 20-22.

*v.  Exemption 7(A)*

FOIA Exemption 7(A) authorizes an agency to withhold a record when its production "could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).  The agency must show that release of the records reasonably could be expected to cause some distinct harm to a pending or imminent enforcement proceeding or investigation. *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978); *Butler v. Dep't of Air Force*, 888 F. Supp. 174, 183 (D.D.C. 1995), *aff'd*, 116 F.3d 941 (D.C. Cir. 1997); *Kay v. FCC*, 976 F. Supp. 23, 39 (D.D.C. 1997), *aff'd*, 172 F.3d 919 (D.C. Cir. 1998).

"Under exemption 7(A) the government is not required to make a specific factual showing with respect to each withheld document that disclosure would actually interfere with a particular enforcement proceeding." *Barney v. IRS*, 618 F.2d 1268, 1273 (8th Cir. 1980) (citation omitted).  "Rather, federal courts may make generic determinations that, 'with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally "interfere with enforcement proceedings."'" *Id.* (quoting *Robbins Tire*, 437 U.S. at 236).  The agency "must demonstrate specifically how each document or category of documents, if disclosed, would interfere with the investigation." *Gray v. Army Crim. Investigation Command*, 742 F. Supp. 2d 68, 74 (D.D.C. 2010).

Here, CIA withheld records "compiled during the investigation into the proper classification of material included in the book No Easy Day [sic]."  Shiner Decl. ¶ 60. Therefore, the category of records withheld are those related to the *No Easy Day* classified information investigation.  CIA failed, however, to identify why the disclosure of the specific category of records would interfere with enforcement proceedings and instead, as Plaintiff argues, relied on a mere conclusion that "this information, if released, would reasonably be expected to interfere and cause harm in any pending or reasonably anticipated enforcement

proceeding." *Id*.  This explanation failed to explain CIA's rationale adequately for invoking Exemption 7(A) and sounds more like Exemption 3.  However, no records were withheld solely on the basis of Exemption 7(A).[10]

### vi.   Exemption 7(E)

Exemption 7(E) protects the disclosure of records or information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  "Exemption 7(E)'s requirement that disclosure risk circumvention of the law 'sets a relatively low bar for the agency to justify withholding.'"  *Public Employees for Envtl. Responsibility v. U.S. Section, Int'l Boundary and Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 204-05 (D.C. Cir. 2014) (quoting *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011)).  "To clear that relatively low bar, an agency must demonstrate only that release of a document might increase the risk 'that a law will be violated or that past violators will escape legal consequences.'"  *Id*. at 205 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)).

CIA withheld records under Exemption 7(E) that "would, if viewed together as a compilation, give the public a picture of exactly how the CIA investigates possible violations of regulations and laws, as well as the types of techniques routinely used together.  Individuals

---

[10] Plaintiff notes that, according to *The Washington Post*, "federal prosecutors reached an agreement in August 2015 by which Mr. Owen would not be charged for the alleged unauthorized release of classified information" and "the Department of Justice [ ] dropped a second, separate criminal investigation into Mr. Owen."  Notice of New Information [Dkt. 17] at 1-2; *see also* Adam Goldman and Dan Lamothe, *Justice Department drops second criminal investigation into Navy SEAL Matt Bissonnette*, Wash. Post, https://www.washington post.com/news/checkpoint/wp/2016/05/31/justice-department-drops-second-criminal-investigation-into-navy-seal-matt-bissonnette/ (last visited Sept. 20, 2016).  This after-the-fact news report does not affect the FOIA analysis.

would then have a complete picture of how to circumvent these techniques and thus circumvent the law." Shiner Decl. ¶ 64. Plaintiff argues that CIA's declaration provides only a "barebones statement" that "pales in comparison to the amount of detail" provided in other FOIA cases. Opp'n to MSJ at 34. The Court, however, finds that CIA has met the "relatively low bar" for Exemption 7(E). CIA states that the records withheld contain information regarding specific CIA investigative techniques and that knowledge of those techniques could allow individuals to circumvent detection and, therefore, circumvent the law. The Court finds that explanation adequate to justify withholding records under Exemption 7(E).

<em>c.  Segregability of Non-Exempt Information</em>

The Court has reviewed CIA's declaration and the submission adequately explains that after "a careful review of the documents, following a line-by-line review of each" none of the responsive records contained "any non-exempt, reasonably segregable material." Shiner Decl. ¶ 65.

## IV.  CONCLUSION

For the reasons explained above, Defendants Motion for Summary Judgment, Dkt. 9, will be granted in part and denied in part and Plaintiff's Motion for Leave to File Amended Complaint, Dkt. 13, will be denied. Judgment is entered in favor of Defendants on Counts One, Two, Four, Five, and Six. Count Three against Department of Defense remains.

A memorializing Order accompanies this Opinion.

Date: September 22, 2016                    _____/s/_____
                                           ROSEMARY M. COLLYER
                                           United States District Judge